NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-160

STATE IN THE INTEREST

OF

H.J.B.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2015-931
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and
Elizabeth A. Pickett, Judges.

AFFIRMED.

Lloyd Dangerfield
Attorney at Law
703 E. University Ave.
Lafayette, LA 70503
(337) 232-7041
COUNSEL FOR APPELLANT:
    D.B.

L. Antoinette Beard
825 Kaliste Saloom Road
Brandywine Bldg 3, Room 150
Lafayette, LA 70508
(337) 262-1555
COUNSEL FOR APPELLEE:
    State of Louisiana, Department of Children and Family Services

**PICKETT, Judge.**

D.B.[1] appeals the judgment of the trial court terminating his parental rights to his son, H.J.B.

**FACTS**

The Department of Children and Family Services (DCFS) became involved in this family's life before the birth of H.J.B., the child at issue in this appeal. D.B. and B.J.Z. were married and had a daughter, M.B. M.B. was removed from the custody of the parents because of the drug dependency of the mother. Ultimately, that case was resolved with M.B. being placed in the custody of D.B. At the time, B.J.Z. and D.B. were living separately. In early 2015, while in treatment, B.J.Z. discovered she was pregnant.

When H.J.B. was born on September 11, 2015, DCFS drafted a safety plan whereby B.J.Z. and D.B. could visit H.J.B. but could not be left alone with him. B.J.Z. violated that plan, and later tested positive for drugs. D.B. at the time failed to submit to a drug screen. On November 20, 2015, an Instanter Order was issued placing H.J.B. into temporary state custody. After a hearing on November 24, 2015, the trial court continued custody of H.J.B. with the state and designated him a child in need of care. The child was placed with foster parents. B.J.Z. and D.B. began working case plans with a goal of reunification. At the case review hearing on October 25, 2016, the trial court changed the goal from reunification to adoption.

On February 14, 2017, the state filed a Petition for Termination of Parental Rights and Certification for Adoption seeking to terminate the parental rights of both B.J.Z. and D.B. The petition alleged termination of parental rights was appropriate pursuant to La.Ch.Code art. 1015(5) and 1015(6). At the hearing to

---

[1] The parties and the minor child are referred to by their initials to preserve their anonymity in this confidential proceeding.

answer the petition on March 20, 2017, B.J.Z. stipulated to the termination of her parental rights. D.B. denied the allegations of the petition, and the matter was set for a hearing.

On October 18, 2017, the trial court held a hearing on the petition to terminate D.B.'s parental rights. Following the close of evidence, the trial court found that the state proved by clear and convincing evidence the grounds for termination pursuant to La.Ch.Code 1015(6) and that termination of D.B.'s parental rights was in the best interest of H.J.B. D.B. now appeals.

## ASSIGNMENTS OF ERROR

On appeal, D.B. assigns three errors:

1. The trial court erred in terminating the rights of D.B. where DCFS failed to prove by clear and convincing evidence substantial non-compliance when D.B. had substantially complied with the case plan.

2. The trial court erred in admitting the records from Dr. Lagarde over objection, considering Dr. Lagarde's opinion, and failing to consider the opinion of Dr. Williams.

3. The trial court erred in terminating the rights of D.B. where DCFS failed to prove by clear and convincing evidence that termination was in the best interest of the child considering the familial connections with the paternal side of the family.

## DISCUSSION

The supreme court discussed the law applicable to an action by the state to terminate parental rights in *State ex rel. A.T.*, 06-501, p. 5 (La. 7/6/06), 936 So.2d 79, 82:

> Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. Permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens. However, the primary concern of the courts and the State remains to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the State. *State ex rel. S.M.W.*, 00-3277 (La.2/21/01), 781 So.2d 1223.

2

. . . .

In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds by clear and convincing evidence. *State ex rel. J.A.*, 99-2905 (La.1/12/00), 752 So.2d 806, 811 (citing La. Ch. C. Art. 1035(A); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Further, even upon finding that the State has met its evidentiary burden, a court still must not terminate parental rights unless it determines that to do so is in the child's best interests. La. Ch. C. Art. 1039; *State ex rel. G.J.L.*, 00-3278 (La.6/29/01), 791 So.2d 80, 85.

On review, this court will not overturn the findings of fact of the trial court in a termination proceeding unless the trial court committed manifest error or is clearly wrong. *See In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47.

The trial court found that DCFS proved by clear and convincing evidence the grounds for termination of La.Ch.Code art. 1015(6). Louisiana Children's Code article 1015 states, in pertinent part:

The grounds for termination of parental rights are:

(6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Louisiana Children's Code article 1036 states, in pertinent part:

C. Under Article 1015(6), lack of parental compliance with a case plan may be evidenced by one or more of the following:

(1) The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

3

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

D. Under Article 1015(6), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

D.B.'s case plan, as approved by the trial court on four separate occasions, included requirements that he maintain stable housing. He was required to provide proof of income. He was required to make parental contributions of $25 each month to DCFS and provide proof of payment to his case worker. He had to submit to random drug screens. He had to attend regular visits with the H.J.B. He was also required to undergo a substance abuse assessment and a mental health assessment and comply with any recommendations made as a result of these

4

assessments. Finally, D.B. was required to attend a parenting class and demonstrate an ability to parent his child. In his later case plans, D.B. was required to sign a release for the DCFS to review his medical records, specifically those related to his mental health.

In the last case plan approved before the termination hearing, DCFS notes that D.B. completed the parenting class requirement. He had submitted to two mental health assessments, with Dr. Henry Lagarde and Mr. Anthony Williams.

D.B. listed his address as a home in Sunset. His case worker, Tammy Handy of DCFS, testified that while this home was adequate, she was concerned he did not actually live in the home. She never saw D.B. at that home when she made unannounced visits. The only time she saw D.B. at the home was when she scheduled visits with D.B. D.B. explained that he usually left his house in Sunset early in the morning to go to his parents' house in Breaux Bridge. He stated that he spent most of the day at his parents' house assisting with the care of his three children who lived with his parents. Ms. Handy noted that on one occasion she left a note on the door of the house in Sunset one afternoon and returned the next morning to find the note untouched. Further, Michelle Guidry, who taught the parenting class to D.B. as an employee of The Extra Mile Family Resource Center, testified that they met at his parents' house in Breaux Bridge because that is where D.B. lived.

D.B. provided proof of income. He failed to provide proof to DCFS of his monthly support payments of $25. According to his case plan, he was required to send a money order to an office in Baton Rouge and provide proof of that payment to his caseworker. Only once did D.B. provide proof of payment, when his caseworker helped him mail the payment to Baton Rouge. At trial, D.B. introduced evidence of nine money orders he claims showed payment of support.

5

From the date of his first case plan in April 2016 to the date of the judgment terminating D.B.'s parental rights in November 2017, those receipts represent only about half of the payments D.B. was required to make in nineteen months. The trial court found that D.B. was not compliant with this element of his case plan, and we find no error in that finding.

From the time H.J.B. was taken into state custody, there were fifty-three scheduled visits between D.B. and H.J.B. D.B. missed twenty-eight of those visits. The record shows that D.B. became more compliant with visitation as time went on, once a paternity test confirmed that he was the father and the case plan goal was changed from reunification to termination of parental rights and adoption. The record shows also that the interaction between D.B. and H.J.B. was strained. H.J.B. would cry unless his foster mother was present during visitation. His case worker, Tammy Handy, testified that he was unable to demonstrate the skills he learned at parenting classes during his visits with H.J.B.

Katie Thibeaux, the family resource counselor from The Extra Mile who facilitated Visit Coaching, testified that D.B.'s file with The Extra Mile for Visit Coaching was closed for three reasons. First, she stated that he repeatedly brought a violent toy to the visits with H.J.B. despite being informed that they were not allowed. The brightly colored toy at issue does not resemble a real weapon, though it does shoot a projectile. While we find the specific toy is not necessarily harmful or cause for concern, D.B.'s inability to follow simple instructions is a pattern of behavior in this case. Second, D.B. refused to comply with H.J.B.'s special food needs when bringing snacks. D.B. did bring snacks that the foster mother did not approve, and D.B. claimed the foster parent was trying to control him. Ms. Thibeaux did testify that D.B. was aware of H.J.B.'s cinnamon allergy and did not bring snacks that contained cinnamon. Finally, Ms. Thibeaux testified

6

that D.B. brought too many family members to the Visit Coaching, though none were actually able to interact with the child. The record shows that there was some confusion about a court order allowing D.B.'s family to visit for a short period of time during regular visitation and the Visit Coaching, which was strictly between D.B. and H.J.B.

The larger concern is Ms. Thibeaux's testimony that D.B. failed to make eye contact with H.J.B. during visits. Further, D.B. failed to notice and correct dangerous behaviors or situations, such as leaving an open soda bottle on the floor or not stopping H.J.B. from attempting to stick things into electrical outlets or his nose. Whether because of D.B.'s failure to attend regular visits with his son when H.J.B. was an infant or D.B.'s own mental health issues, it is clear that D.B. and H.J.B. did not establish a strong bond.

Ms. Handy discovered during the course of this case that D.B. received treatment through Biltmore Health Services. The records from Biltmore Health Services show that D.B. has been diagnosed with schizoaffective disorder and anxiety disorder. He has been on psychotropic medications since he was fourteen years old. He has had hallucinations and suicidal ideations. D.B. testified that he was prescribed Xanax, Invega, and Trazodone. Amanda Eaglin, a mental health specialist with Biltmore Health Services, testified that D.B. has been her client for more than two years. Among the services she provides is helping him take his medication as prescribed. Ms. Handy testified that D.B.'s father manages D.B.'s medication. While D.B. failed to submit to drug screens at times, Ms. Handy testified that abuse of illegal substances were not an issue for D.B. at the time of the trial.

Anthony Williams, a licensed professional counselor, saw D.B. twice in early 2016 for a mental health evaluation. Mr. Williams testified that he believed

H.J.B. should be reunited with D.B. as expeditiously as possible. He did not believe that D.B. would put H.J.B. in jeopardy and H.J.B. should be with his father. Mr. Williams also testified that he never met with the child, had no information on the previous diagnosis of D.B., did not know about the medications D.B. was prescribed, and did not know D.B. had three other children who lived with D.B.'s parents. Ms. Handy testified that DCFS did not follow Mr. Williams's recommendation of reunification because she could not confirm where D.B. actually resided, where the child would reside, the parenting skills of D.B., and D.B.'s protective capacity for H.J.B. We find no error in the trial court's failure to give weight to Mr. Williams's opinion.

After receiving Mr. Williams's report, DCFS referred D.B. to Dr. Henry Lagarde for a mental health evaluation. Dr. Lagarde's report did not recommend reunification. D.B. objected to the admission of Dr. Lagarde's report, which the trial court overruled, finding that it was a certified medical record and thus admissible. D.B. argues in his second assignment of error that the trial court's ruling was error and denied him the right to cross-examine Dr. Lagarde, citing *Barker v. Barker*, 14-775 (La.App. 1 Cir. 11/7/14), 167 So.3d 703. *Barker* involved a custody battle between two parents and specifically implicated La.R.S. 9:331, which requires a mental health professional to testify in a custody case. This is a termination proceeding, not a custody dispute, so La.R.S. 9:331 does not apply to this case. We find no error in the trial court's consideration of the report of Dr. Lagarde.

Considering the totality of the evidence presented, we find no manifest error in the judgment of the trial court finding that the state proved, by clear and convincing evidence, that D.B. failed to comply substantially with his case plan and there is no reasonable expectation of significant improvement in D.B.'s

8

conduct. We therefore affirm the trial court's finding that the grounds for termination of parental rights pursuant to La.Ch.Code art. 1015(6) were proved in this case.

In his third assignment of error, D.B. argues that the trial court erred in finding that the termination of D.B.'s parental rights is not in the best interest of H.J.B. D.B. argues that termination of his parental rights will deprive H.J.B. of a relationship with his father, siblings, and extended family. The evidence shows that H.J.B. has been placed in a stable adoptive resource home since he was taken into the state's custody in November 2015. His siblings live with their grandparents, not D.B. D.B. has not shown that he will be able to care for H.J.B. without a great deal of family support. The record shows that because of his mental illness and need for medication, D.B. requires assistance from his family and other sources just to care for himself. The trial court did not err in finding that the best interests of H.J.B. are served by termination of parental rights so that he can be adopted.

## <u>CONCLUSION</u>

The judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellant, D.B.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.